FILED

2012 Apr-16  PM 01:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## <u>WESTERN DIVISION</u>

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) |
| | ) **Case No. 7:11-CR-290-VEH-HGD** |
| **ALTHEA F. MALLISHAM** | ) |
| | ) |
| Defendant. | ) |

### <u>GOVERNMENT'S SENTENCING MEMORANDUM</u>

COMES NOW the United States of America, by and through undersigned

counsel, and respectfully files its Sentencing Memorandum in the above-captioned

case.  Pursuant to the plea agreement, the United States hereby recommends that

the Defendant receive a sentence at the low end of the advisory guideline range of

87 to 108 months' imprisonment.  In support of that recommendation, the United

States says as follows:

### I.      <u>Summary of the Offenses</u>:

At the time of each assault, the Defendant, Althea F. Mallisham, was on duty

as a Tuscaloosa County Sheriff's deputy, carrying a department issued X26 Taser,

and actively performing her supervisory duties as a sergeant.   Before, during, and

after each assault, the Defendant acted under color of law.  Specifically, she used

her authority as a supervisory law enforcement officer to facilitate each of her

assaults.

**Count One**

On or about June 9, 2008, the Defendant physically assaulted – through five separate cycles of electro-shock – an adult, male, pre-trial detainee (R.M.) with a dangerous and deadly weapon in the Tuscaloosa County jail, within the Northern District of Alabama.  When the assault began, R.M. was confined to a solitary, medical observance cell because he suffered from anxiety, panic attacks, posttraumatic stress disorder, and borderline personality disorder.

In the narrative of her written report, the Defendant stated that R.M. was "banging on the door of his cell," "shouting out," and "disturbing the booking area as well as the front lobby." Govt Ex. 1.  The Defendant stated that R.M.'s cell was "entered five separate times and he was dry stun tased."  Govt. Ex. 1.[1]  The Defendant signed the report.

As a result of the assaultive conduct of the Defendant, R.M. sustained serious bodily injury.  It was because the Defendant was a Sheriff's sergeant that she was authorized and permitted to carry the X26 Taser that she used in the assault against R.M.  It was also because the Defendant was a Sheriff's sergeant

---

[1] The Defendant states in her report that R.M. was tased by "Sgt. Mallisham and [another supervisor]."  The evidence demonstrates that the Defendant possessed the taser.

that she was able to gain repeated access to R.M., who was secured in a cement cell with an iron door.

The Taser Coordinator subsequently issued a memorandum on the incident. Govt Ex. 2.  In that memorandum the Taser Coordinator states:  "1st Our policy and procedure discourages Drive Stuns"; "2nd Our policy states everyone Tased will be taken to the hospital for examination"; "3rd Our policy states EMS personnel will be called after 3 applications of the Taser"; and "4th Policy states the Taser will be downloaded after an application."  *Ibid*.  The Taser Coordinator concludes the memorandum with the following observation: "Using the Taser on someone five times for making too much noise and then not following policy needs to be addressed."  *Ibid*.

### Count Two

On or about September 16, 2008, the Defendant physically assaulted – by electro-shocking – an adult, male, pre-trial detainee (H.G.) with a dangerous and deadly weapon in the Tuscaloosa County jail, within the Northern District of Alabama.  When the assault began, H.G. was confined to a holding cell and he did not pose a threat to any other person.  A video of this incident was captured by jail surveillance cameras.  Govt Ex. 3 (259_9/16/2008).  In the video, H.G. can be seen close to the door of the cell, appearing to yell or call out through the vent in the

door.  The Defendant enters the cell, and in her right hand is the taser, the white

beam visible.  The Defendant speaks to H.G. and then leaves the cell.  H.G. again

moves toward the door of the cell appearing to call out.  When the cell door opens

the next time, the Defendant enters and deploys the taser, electro-shocking H.G..

The Defendant's Response to Resistance Report states that the "Subject was

tased for nonresponsive compliance."  Govt. Ex. 4.  The Defendant further stated

in the narrative that "[H.G.] was continuously shouting and knocking on the cell

room door and was tased by Sgt. Mallisham."  *Ibid*.

As a result of the assaultive conduct of the Defendant, H.G. sustained

serious bodily injury to include pain.  It was because the Defendant was a Sheriff's

sergeant that she was authorized and permitted to carry the X26 Taser that she used

in the assault.  It was because the Defendant was a Sheriff's sergeant that she was

able to gain access to H.G., who was secured in a cement cell with an iron door.

#### **Count Three**

On or about September 21, 2008, Defendant physically assaulted – by

electro-shocking – an adult, female, pre-trial detainee (L.H.) with a dangerous and

deadly weapon in the Tuscaloosa County jail, within the Northern District of

Alabama. When the assault began, L.H. was constrained with her hands cuffed

behind her back.  L.H. was in the hands-on custody of another detention officer.

L.H. had been in an altercation with another inmate, and the detention officer had handcuffed L.H. and was moving her to another area.

A video captures a portion of the interaction between the Defendant and L.H.  Govt Ex. 3 (Metro Hall_9/21/2008) About 30 seconds into this video, there is a single detention officer escorting a single detainee in an orange jumpsuit at the far end of the hall.  The Defendant joins them there.  The Defendant places her hand around L.H.'s neck and pushes her back against the wall.  The detention officer moves away from the Defendant and L.H.   The Defendant then walks towards the camera, making a gesture towards the detention officer.

The Defendant instructed the detention officer to take L.H. around the corner out of the view of the cameras.  Once in the new location, the Defendant drive stun tased L.H. repeatedly along the abdomen and lower body, all while L.H. was handcuffed.

Notably, the Defendant did not file a Response to Resistance Report to document her use of force.  Rather, the detention officer wrote an Incident and Offense Report to document L.H.'s altercation with the other inmate.  Govt Ex. 5. The Defendant reviewed the detention officer's report, directed changes to it, and then signed the report in her capacity as supervisor.  The report makes no mention of the tasing incident.

5

As a result of the Defendant's assaultive conduct, L.H. sustained serious bodily injury.  It was because the Defendant was a Sheriff's sergeant that she was authorized and permitted to carry the X26 Taser that she used in the assault.  It was also because the Defendant was a Sheriff's sergeant that a first-year detention officer complied with the Defendant's instruction to escort L.H. to an area beyond the surveillance camera's range just before the assault.[2]

## II.     Response to Defense Objections

The Defendant filed no objections to the Presentence Investigation Report.

## III.    Application of the Guidelines

Although the Guidelines are not mandatory, they remain "the starting point and the initial benchmark" in determining the appropriate sentence.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  The Guidelines as written "reflect the fact that the Sentencing Commission examined tens of thousands of sentences," and also recognize that many "can differ as to how best to reconcile the disparate ends of punishment."  *Rita v. United States*, 551 U.S. 338, 349 (2007).  The "result is a set of Guidelines that seek to embody the Section 3553(a) considerations, both in principle and in practice."  *Id.* at 350. Thus, "it is fair to assume that the

---

[2] Government's Exhibit 3 also includes two additional videos of the Defendant tasing another inmate, D.D., on March 23 and June 3, 2008.  See Govt Ex. 3 (244_3/23/2008 and 259_6/3/2008).

Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve" those statutory objectives.  *Ibid.*

In this instance, the Defendant's Total Offense Level under the advisory guidelines is a Level 29, reflecting a 3-level reduction for acceptance of responsibility.  The Defendant's Total Offense Level is based upon her commission of an aggravated assault (+14) of three victims (+3 grouping), with a dangerous weapon (+4), while acting under color of law (+6), and causing serious bodily injury (+5).

The Court will "presume that the Sentencing Commission intended separate guidelines sections to apply cumulatively, unless specifically directed otherwise." *United States v. Dudley*, 463 F.3d 1221, 1227 (11th Cir.2006) (*per curiam*).  The Defendant faces a lengthy advisory guideline sentence precisely because her criminal conduct, in all its many facets, results in the application of significant offense adjustments set forth by the Sentencing Commission.  The application of these guidelines does not constitute double-counting.  Quite the contrary, each was intended by the Commission to impact the ultimate calculation.  The Eleventh Circuit has explained that "[i]mpermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of

another part of the Guidelines." *United States v. Dudley*, 463 F.3d 1221, 1226-27

(11th Cir.2006) (*per curiam*) (internal quotation and citations omitted).

### III.    Application of Sentencing Factors under 18 U.S.C. § 3553(a)

Having correctly calculated the Guidelines range, the Court must impose a

sentence that is "sufficient, but not greater than necessary, to comply with the

purposes" of sentencing set forth in 18 U.S.C. § 3553(a).  The requirement is "not

merely that a sentencing court when handing down a sentence be stingy enough to

avoid one that is too long, *but also that it be generous enough to avoid one that is*

*too short*."  *United States v. Irey*, 612 F.3d 1160, 1197 (11th Cir. 2010) (en banc)

(emphasis added).   Based on the trial record in this case, the government submits

that a sentence at the low end of the advisory guidelines range of 87 to 108

months' imprisonment would achieve the purposes of sentencing set forth in

Section 3553(a).

A substantial custodial sentence would appropriately reflect "[t]he nature

and circumstances of the offense and the history and characteristics of the

defendant."  18 U.S.C. § 3553(a)(1).  Such a sentence would also "reflect the

seriousness of the offense," "promote respect for the law," and "provide just

punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).  Those considerations

reflect "the 'just deserts' concept, which carries the need for retribution, the need

to make the punishment fit the crime, and the need not just to punish but to punish justly." *Irey*, 612 F.3d at 1206.

The Eleventh Circuit has explained that "[b]ecause the punishment should fit the crime, the more serious the criminal conduct is the greater the need for retribution and the longer the sentence should be. The seriousness of a crime varies directly with the harm it causes or threatens. It follows that the greater the harm the more serious the crime, and the longer the sentence should be." *Id.*

The Court's recognition of the seriousness of the offense would also meet the sentencing goal of general deterrence. That is, a custodial sentence should be handed down with hopes that others instilled with the public trust and police powers who are involved in or might become involved in an assault of inmates will consider the possibility of going to prison for an extended period. Specific deterrence is also a consideration. The government submits that a custodial sentence would thus meet the sentencing goals of both general and specific deterrence.

Finally, a custodial sentence would "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."18 U.S.C. § 3553(a)(6). Section 3553(a)(6) focuses on unwarranted disparities among similarly-situated federal defendants.

Respectfully submitted this 16th day of April, 2012.

JOYCE WHITE VANCE
United States Attorney
Northern District of Alabama

THOMAS E. PEREZ
Assistant Attorney General
United States Department of Justice
Civil Rights Division



___/s/_____
TAMARRA MATTHEWS JOHNSON
Assistant United States Attorney
Northern District of Alabama

____/s/_____
D. W. TUNNAGE
Trial Attorney
United States Department of Justice
Civil Rights Division

## CERTIFICATE OF SERVICE

I certify that on April 16, 2012, I filed this document electronically with the

United States District Court for the Northern District of Alabama using the

CM/ECF system and thereby caused a copy to be served on the Defendant's

counsel of record.


_____/s/_____
TAMARRA MATTHEWS JOHNSON
Assistant United States Attorney